Good morning, your honors. My name is Jeff Price. I'm representing the appellant in this case. I would like to reserve seven minutes for rebuttal. Mr. Price, did you ever file what you said you were going to file in your opening brief, and then we gave you a wake-up call, and then you only filed one item, which showed on your Batson challenge that that person was indeed black. But then you never filed anything else, as far as I know. And so how can you even establish that she was the only black in the jury pool for that trial that you exercised your Batson challenge against, because you didn't do what you said you were going to do in your opening brief? Well, number one, your honor, the district court denied my ex-party application. Number two – actually, number one should probably be I believe the defendants will concede that she was the only black on the jury, because she was, and they were there. Number two – Well, there's nothing in the record to date that would establish that. Well, I believe that they'll concede it, so it doesn't need to be in the record. But number three, I believe that in the event that the main argument in this case is not successful, which would moot out the Batson claim, that the court should not submit this case and should permit me to get the information from the district court, because it is there. The district judge was there when he made the erroneous decision that a prima facie case was not made. He was present, and he knows that that was the only African American on that panel. So therefore, in the event that the court wishes to explore that issue, the court should not submit this case. I will get the information. I will submit it. I anticipated that the defendants would agree to release that information, but initially they did. But then they decided that they would not agree to my getting the juror qualification forms for all of the jurors, and would only agree for the one juror. So I hope that answers the question. Because in that event, under the Shirley v. Yates case, there is no question that the determination made by the district court was erroneous. And that is the case in this court. I believe it's 807F3rd. This case arises out of a brutal attack on Mr. White while he was an inmate at the notorious Central Jail in Los Angeles. And Mr. Baca was the overseer of that place at the time. And Mr. White was tasered, severely beaten. He was tasered when he was partially unclothed. And vertebrae in his back were broken during the incident. The incident arose because of basically what amounts to a contempt of cop type situation. So what happened with the jury instructions in this case is that the parties initially agreed on the correct instruction, which was at the time 9th Circuit 9.22. But at the pretrial conference on March 14, 2014, the district court decided that that instruction was incorrect. And he appeared to be focusing on the fact that it had the Fourth Amendment in the title of the instruction, which as we know now, after Kingsley, is really of no moment. So he got hung up on that and he ordered us to go back to the drawing board. The defendants were reprimanded for agreeing to an instruction that would likely result in reversible error, ironically. And we all went back. I proposed an instruction. Having seen that the district court was adamantly opposed to what I believe to be the correct instruction, which I had argued in an earlier case in this court, Young v. Wolfe, which was wrongly decided and was actually mentioned in Kingsley, that 9.22 was correct. But I proposed an instruction that had some vestiges of the 7th Circuit instruction that was discussed by the 7th Circuit before the case went to the Supreme Court. The defense went back to 9.24, which is the Whitley v. Albers instruction, and that's what the judge gave with a few additional modifications. We do know now that that instruction was erroneous. It was a subjective instruction. It was not objective. And it was erroneous. It doesn't seem as though your opponent is contesting the error part there, just saying that any error was harmless. And I was hoping to hear from you this morning to help us work through the evidence that you think shows that the error wasn't harmless. And in my mind, what that would involve, I'm just looking at the instruction that was given, the problem is that that second element that the judge said the jury had to find in order to conclude that the defendants had deprived your client of his 14th Amendment rights required the jury to find that the defendants acted maliciously and sadistically for the purpose of causing harm, right? That's the error. And so what's the version of events under which the jury would have found that the defendants used excessive force, the first element of the instruction, but would not have found that the defendants acted maliciously and sadistically? That's, I guess, where it seems to me that's what you need to show to persuade us that the error was harmful. Well, yes, in my reply brief I addressed that, and also I'd like to first state that it's the defendant's burden to show harmless error, and they did not even begin to meet that burden. But to respond to the question, I would say that in this incident, there was some kind of an altercation between Mr. White and several deputies. And so I don't know if I'm not understanding the question, but it is virtually impossible to imagine that were the jury to find that the defendants were merely unreasonable. Let me help you with this, because like most of these cases, the trial, I assume, turned on two very different accounts of how the incident went down, right? I read your client's testimony, and obviously if the jury believed him in terms of how things went down, presumably they would have found in his favor, right? The officers, of course, give a completely different version in which your client was really the source of the problem and that they just did what was reasonably necessary to control him. So the defense position is that, well, yes, maybe the instruction was erroneous, but it's clear we know from the jury's verdict that they obviously credited the defendant's version of events and did not credit your client's version. And if that's true, it wouldn't have mattered whether the instruction was different. I take that to be their argument. I mean, their argument is – that is their argument. It's probably the only argument they have. So why is it wrong? It's clearly wrong just because of what I said in my reply brief. The malicious and sadistic standard is an almost insurmountable standard to reach. I think if the jury had believed your client's version of events from A to Z, why it struck me as, yeah, it sounded pretty malicious and sadistic in terms of the beating that was inflicted upon him, if you believed his version of events. But whether or not they believed his version of the events is unknown. So I guess I'm going to quarrel with the premise. We know they didn't believe everything he said, right? Yes. So I think what Judge Waltz was asking is why does it make any difference? They think he's a liar. They go with the officers. What difference does it make what standard it is? And I thought your answer was going to be is they might think he's a liar as to some of the fine details, but they might have believed his main story, but they were unsure about some of the more extreme details of the story, which sounds to me like Judge Waltz and I are going back and forth. But that's what's more interesting. What is there in the record to suggest that maybe they didn't believe everything he said, but they could and probably did and may well have believed in his main story? Is there anything to suggest that? In the trial record, I don't believe there were any jury questions that would address that. But it's still what I go back to, obviously I guess not answering the question, is that the jury easily could have believed based upon just maybe even the deputy's testimony that there was an objectively unreasonable use of force, especially the tasering, but then found that it was not malicious and sadistic for the very purpose of causing harm. And that could have been accomplished very simply by a better special verdict form than what was used, and then we would know the answer to the question. Absolutely. But now we're just speculating. Absolutely. There's nothing in the verdict form that helps out the defendants at all. And this trial was also mired with the defendants playing the entire deposition of Mr. White when he was in prison, and extremely inflammatory information that he spoke about in his deposition. So there are a number of ways that the jury could have been prejudiced against Mr. White, even if they believed the kernel of his story that would have given him a verdict had he not had to prove that the situation was malicious and sadistic for the purpose of causing harm. I guess I have... Dave, you want to save your two and a half minutes for about a minute? Yes, thank you. Okay. We'll hear from the defendants. Good morning, Your Honors. May it please the Court. Lauren Kropf on behalf of the appellees, Defendants County of Los Angeles, and the individual county defendants. I'd like to start by addressing the jury instruction issue and by pointing to the fact that Your Honor's analysis, I believe, is exactly correct. Well, I haven't engaged in any analysis yet. And actually, I'm quite skeptical of your position. So maybe you can help sort through it. We didn't get a whole lot of help from your opponent. But, I mean, you would admit, first off, the instruction was wrong, right? Absolutely. We'll concede to that. Yeah, but what I think is important here is that the court instructed the jury delineating three very distinct steps. First, to consider whether, et cetera. No, we don't know what order the jury considered them in. So I don't think you need to waste your time on that. Sure. The jury was told they needed to find three things in order to conclude that the – sorry if I'm yelling into the microphone – that the defendants violated the plaintiff's constitutional rights. The second thing that the judge instructed them to find, they didn't really need to find, right? The malicious and – Absolutely. Okay, so – So I think based on the terminology that's used in the instruction, the three steps – I won't use an order, but like you said, excessive force based on all of the circumstances, and then the intent standard for malicious and sadistic, and then causation. Those are three distinct questions in the verdict form as well. No, they're not. Not exactly. I'm sorry. I would say questions two and three deal with causation, and four deals with malice, and a reasonable jury is going to look at this four-page verdict form. I mean, you can try to persuade my colleagues of that, but you're not going to persuade me on that. So what I need help with is understanding why on the trial record that was amassed, why is it not reasonable to assume that perhaps the jury found that the officers did use excessive force, but the reason we're going to rule in their favor is that we don't find that it was done maliciously and sadistically. Why is that not a reasonable possibility here on this record? I would say that's not a reasonable possibility based on the – Well, the fact that the way in which the case was laid out, there was a conspiracy theory that the plaintiff brought about that all different officers from different – from Las Covinas and from Los Angeles were somehow conspiring to bring forward this matchup between a deputy and Mr. White. And in that case, I don't believe that that is a reasonable justification for what happens in a custodial setting, which is the need to control a situation. Deputies are outnumbered by inmates. And in that case, a deputy was swung at. And so there was an issue, and the issue was quashed. And after the issue was quashed, there was movement forward. I do believe that the – I didn't follow any of that. Me neither. Maybe you can start over. Okay, certainly. First, I would say the plaintiff brought about a conspiracy theory where different districts – I'm sorry – where different stations conspired together against him, and that this use of force was part of that. I would say that's objectively unreasonable. Second – or I'm sorry – that is an unreasonable theory. Moving forward, in a custodial – Well, but how do you know what order the jury considered that? They might have gotten together and said, well, there's a lot of stuff here, very complicated, but the judge told us it's got to be malicious. Anybody here think it's malicious? No. Well, let's not talk about the rest of the stuff because nobody thinks it's malicious. We go home. Why isn't that a reasonable possibility, but the jury did? Well, I think a reasonable juror is going to see the vocabulary and buzzwords given by the judge. Well, malicious sounds like a buzzword to me. Absolutely, and on the verdict form as well, and the word malice is on the verdict form in question number four. Yeah, but that's after they find damages, and that's a prerequisite to punitive damages. It has nothing to do with the finding of excessive force. Well, causation is also separate. Well, why does it come after damages and right before punitive damages? I would say it's certainly not the most eloquently ordered verdict form, but a reasonable juror isn't going to make that inquiry. They're going to see the word malice. They're going to see malicious. Oh, no, they're much smarter than that. You don't decide damages and then go to another element of the offense that the plaintiff had to prove after you've decided damages. You don't have to have a law degree to figure that one out. Okay. So how does the special verdict form help you? Well, that was it. Our intention is that you're going to see these phrases and that you're going to go in an order, you know, in a classroom setting. When people walk in, they sit at a desk. The next day, oftentimes, they go and sit at the same desk. There's a repetition and an order to things. But did you look at the verdict form? Because they never got past question one. Exactly. Right, so whatever you're talking about in question three or question four has nothing to do with the argument we're asking you to address. Again, I'm not sure why you're wasting time on that. It's not terribly persuasive. What would be more helpful, and you've taken two runs at it and haven't made much headway, is talking about the evidence here and why your view of how this verdict was arrived at is the one that we're supposed to decipher when we have nothing to go on from the verdict form. I have to go back to, I believe that there is something to go off of on the verdict form. But obviously, Your Honors are not persuaded by that. Because it's just wrong. I'm sorry. I mean, I don't mean to insult your intelligence, but I really don't think you're reading either the jury instructions correctly or the verdict form because those two things together do not in any way support the argument you're trying to make. Okay, would you like . . . Do you have a plan B? I can certainly go ahead and explain further the . . . Good. I think you better try. You've got eight minutes left. Like I said, I think that the evidence presented presents enough for the jury to determine that the officers used force that was objectively reasonable. And they did that because the officer was presented with a situation, someone swinging at him. The force was used. The situation was quashed. And they had to taser him? Yes. But after the taser, as soon as the taser was administered, the force was complete and Mr. White was brought for medical care. And there wasn't a continuous battle. There wasn't a conspiracy of officers trying to have Mr. White injured for some reason or another. They're in a custodial setting where someone is presenting a danger. Riots can incite from that. Different things can come about. And when there's a quarrel and it's physical and it's quickly quashed and moved forward, a jury would understand that this custodial setting presents that situation and force is sometimes necessary for conflict resolution here in this particular situation. And therefore, that is not considering any sort of malicious or sadistic intent. That's considering the circumstances, the facts and circumstances of this case. But we're not hearing the issue of whether or not there was sufficiency of the evidence to support the jury's verdict. There was sufficient evidence to support a verdict either way. And it seems to me all you're arguing is, well, there was some evidence in the record upon which a jury could find, but that goes both directions. And that's not the issue. The issue is whether the error in the instruction requiring sadistic and malicious is harmless. And I believe more likely than not, the jury would have come to the same verdict. Because? Based on the reasonableness of the situation at hand, the fact that there is no evidence I know of malicious and sadistic intent aside from this conspiracy theory, which seems unreasonable. The evidence is the events that took place, what actually happened and the intent was brought forward. And as such, the jury's consideration would more likely than not have been the same. Well, I'll just tell you what has given me the most pause from the record. During cross-examination, so I don't think you were the trial lawyer, but your colleague was cross-examining the plaintiff. And the plaintiff at one point said, after describing this incredibly vicious beating that left an enormous pool of blood on the floor and nurses aghast and him being taken off to the hospital, where I think he was in the hospital for a while, right? No, I believe he was actually released shortly thereafter. Okay, that's not what I'm remembering. But anyway, he obviously suffered severe injuries. You're not disputing that. You're just saying that. No, we're not disputing that. Right. But at one point he said something to the effect of, you know, I'm not sure that they really intended for the beating to be as severe as it ended up being. It might have just been that, you know, it just got out of hand. And I took from that that, you know, I guess the jury could say, well, you know what? We actually believe him, that he was beaten excessively, that this went ñ it got out of hand. It went beyond what was reasonable under the circumstances. But the plaintiff himself admitted that, you know, they didn't really intend to put him in the hospital or to break his back. And it just ñ so we're going to conclude that although there was excessive force used under all the circumstances, it wasn't ñ the defendants didn't act maliciously and sadistically. So that's, I guess ñ I'm just saying that's what has bothered me about finding in your favor here. And what is your response to that? Well, the fact that there ñ that even the condition that there was no intent to punish or act maliciously and sadistically, I think that certainly helps the appellee's defendants because the result of the injuries was ñ could have been either way. The back issues could have been based on the prison bars. And there's ñ we could break down the different injuries. And we're not saying that the injuries weren't there, of course. But if the intent has to be malicious and sadistic, and in this case someone is taking a swing, it gets out of hand because one officer is a threat or is being threatened, rather. The officer is 5'9", Mr. White is 6'4". And so someone else comes to help the situation, and the situation's being ñ the attempt to take over control is to quash the situation is taking place, and then the taser stops the threat. And so if the testimony that the intent of it getting out of hand ñ I believe that that ñ and that the officers were not malicious and that the officers weren't intending to punish or intending to cause all these injuries, then the fact that there's an issue going on and officers come to ñ The fact that he beat him to a pulp after there's a need to do so is okay? Well, I don't believe that they were beating him to a pulp after there was a need to do so. There was ñ They're required to stop as soon as he's under control, right? Absolutely, and that's why after the taser was immediately stopped, the control was taken care of. But that's the question. When did that point arrive? And plain disposition is that that point arrived before they actually stopped. They just kept doing it, they kept beating him. You can imagine that. People are angry, and they keep punching and hitting and kicking. Well, that wasn't addressed in the brief, and in this case, the length of time of the fight is considered quite quickly. There's a swing, there's a swing back to try to control the situation. Officers are arriving very, very quickly, and the taser is used to ultimately quell the situation. Would you like me to ñ would Your Honors like me to address the Batson issue? Defendants do not concede that juror number one was the only black juror in the veneer, but certainly do concede that she was. Our position is that merely stating that there was no follow-up questions on Wadir is not enough. We learn about different factors that potentially can inform bias from the judge's questioning, certainly. And in this case, the juror number one was a marriage and family therapist intern. She solves problems in complex resolution with words, and we've just been talking about how this conflict had to be solved, of course. I just want to prove up the race of the veneer. I'm sorry? What evidence would there be? You know, when I've served on juries, I don't remember self-identifying as the race. I may be wrong. I may have done it, and I don't remember, but I'm just wondering, how would one know what the makeup of the veneer is? The identifications are not orally given, and it would be based on the juror questionnaires. However, we were given a stipulation in late December, and the privacy of the jurors in the veneer is something that we considered, and especially in this case where I don't believe that we need that. I don't think you answered my question. I see you're going all over the place answering everything I asked. How would one know, looking at a group of people, the way they line up in the courtroom when we're picking a jury, is there some written record as to the race of each member of the veneer? It would be the juror questionnaire form. And that one has a self-identification? It does. It does have a self-identification for race. It was in this case. It was. My recollection, when I filled out the juror questionnaires, I do not remember self-identifying or being asked about race. I don't believe it takes— Maybe— No, I don't believe that takes place in the courtroom. The questionnaire is filled out. I know where the questionnaire is filled out. You think people—I've actually done it. I've been there. You go into the jury assembly room, and you show up, and they give you a questionnaire. I know how the process works. Absolutely. If you see what was submitted, it does have that portion, and it does say that juror number one was African American. That was submitted to this court in the further excerpts of record. And those records exist as to the entire panel, preserved? I would presume so. We don't have that opportunity. They're not in this record. They're not in this record. However, they do exist. And, you know, this appellant's opening brief was submitted months ago, and then the support for the record was asked to be submitted very, very recently, and the weight of the question of privacy for the jurors didn't seem reasonable for us to— Well, let me ask you this. That seems quite pretextual to me, because you could have submitted all the forms and blacked out all the personal identifying information, including the names, everything else except the race. And we certainly could do that. Yeah, but we can't make you do it. But if you were so concerned about juror privacy, you could have done that, and at least we'd have a record to know what the race of all the jurors in the— Absolutely, and I think had we had more time, we probably would have considered all of that. I didn't even have an opportunity to review the juror questionnaire form until Friday, because that's when I received it. So we didn't know what the forms looked like. We didn't have an opportunity to review them to determine that. We didn't know that there would be a race portion on there, but there is. And so I think had we received them, reviewed them, that certainly would have been a reasonable stipulation to make, but you can't make those decisions when you're not reviewing those forms. We also do believe that that isn't relevant in this situation. Would you like some time to do that? I don't mean today. I mean, would you like 48 hours to do that? To review the forms? I believe it takes longer than that. Do all these things that you have said you didn't have time to do. How much time would you need? I'm not certain how long it takes the district court. I'm not asking for a precise answer to the third decimal place. No, we could certainly supplement with the court the entire veneer. We could do that. We could attempt to do it in 48 hours. How long would it take you? Perhaps Mr. Price would know, because the further excerpts of record were submitted by him. But it is our position that that wouldn't make a difference, based on the fact that we would have been able to present a race-neutral reason, even if the plaintiff had established a prima facie case, and that's because of occupation. And that is an articulable justification. The difference in conflict resolution is certainly race-neutral. And so I don't believe it's necessary. We could certainly do that. But in this case, I don't think that that would be enough, because whether or not a prima facie case was established, we would have a race-neutral justification for the use of the peremptory. And I would like to make a correction to the record, because this was not our only peremptory. We did use another peremptory challenge, and that's on excerpts of record page 121. So if the Court wishes for us to supplement them, we would certainly be willing to do that, if we have a chance to review and potentially redact information for the protection of the veneer. And we certainly would be fine doing that, again, to reiterate, because we don't believe that that would change our argument. So you chose to talk about the privacy information just to sort of distract us on something that you think is relevant, right? This is what Judge Bennett asked you about. Why are you talking about this stuff, which seems like a type of thing? No, I don't believe so. I think that that's the justification. You have much better answers to the question than to rely on the privacy information considerations. Anyway, your time is up. Thank you. I don't remember if you had any time left. 225. Well, I don't know where this 225 positive, negative, because the clerk is not letting me know. There we go. It would take 48 hours at the most if this Court ordered release of the juror questionnaires, and I think it should do that. It looks like opposing counsel is willing to do that. It can be easily redacted. What would they show? They will show the races. They will show that I am correct and that under Shirley I win. They will show that she was the only African-American on that jury. Does that mean she can't be struck at all? No, it means that you go to the third step, the second step. In this case, that didn't happen. Well, the judge never went to the second step, so you don't go to the third step. You don't go from one to three. You go to two. Well, you have to go to two. Right. So he foreclosed two. Two, right. They wouldn't have had anything to go on. I'm not going to tell them how to do it. But I do have an answer to your question and the panel's question in general about harmless error, and that is that given the fact, I know that juries are not usually back there talking about subjective objective, but clearly malicious and sadistic is, you know, it is subjective. And I can say that when the jury was considering that, because that is a more subjective or is a subjective standard, even though they're not talking about that in the terms of subjective objective, I believe the reason this is not harmless is that that led them to accept the testimony of the defendants and give that greater weight as to whether or not that subjective standard was met in this case. And my client was assailed. He was, like I said, his entire deposition, I fought bitterly to keep that out. It was let in. And, you know, his credibility was severely diminished. So I believe that is why this is not harmless. And I request that we get those jury qualification forms. Initially, defense counsel agreed to that, but then decided not to. And that will solve that problem. Thank you. Okay. Case is signed. We'll stand some minutes.
judges: Kozinski, Watford, Bennett